UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ICE CASTLES, LLC, a Utah Limited Liability Company, | Case No. 4:18-cv-00571-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| LABELLE LAKE ICE PALACE, LLC, an Idaho Limited Liability Company; and LABELLE LAKE, LLC, an Idaho Limited Liability Company, | |
| Defendants. | |

## I. INTRODUCTION

Pending before the Court are numerous motions filed by the parties in this case.[1]

Today, the Court takes the opportunity to address Defendants LaBelle Lake Ice Palace,

LLC, and LaBelle Lake, LLC's (collectively "LaBelle") Motion for Partial

Reconsideration (Dkt. 67) and Motion to Compel (Dkt. 76).

---

[1] There are, in fact, nine substantive motions, as well as five procedural motions, pending in this case. Recently, the Court and counsel discussed the posture of this case and the fact that the dispositive motion deadline was—at that time—fast approaching. Owing to the fact that the Court's decision(s) on the pending motions would likely affect dispositive motion practice, the Court suggested the new deadline for dispositive motions be reset to thirty days after the Court issues a ruling on all pending motions. The parties agreed and the Court so ordered. Dkt. 131. The Court had originally intended to issue one large, omnibus order addressing all pending motions. However, the Court has determined it will be more efficient to issue decisions as it completes them. This will give the parties time to review the decisions and take any necessary action while other decisions are forthcoming. In short, the Court will reset the dispositive motion deadline once all motions have been adjudicated.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court finds good cause to DENY LaBelle's Motion for Partial Reconsideration and GRANT in PART and DENY in PART its Motion to Compel.

## II. BACKGROUND

On December 27, 2018, Plaintiff Ice Castles, LLC's ("Ice Castles") filed the instant suit against LaBelle. Ice Castles seeks damages and a permanent injunction against LaBelle for infringement of its patent, United States Patent No. 8,511,042 ("the '042 patent"),[2] which protects Ice Castles' patented method (or process) of constructing ice structures. In sum, Ice Castles and LaBelle are business competitors who each create outdoor winter attractions constructed of ice. These attractions include sculptures, artistic creations, and structures visitors can enter and/or explore. Ice Castles alleges that LaBelle has infringed— and continues to infringe—on one or more claims and designs of the '042 patent. LaBelle

---

[2] The '042 patent is the sole patent at issue in this case. As the Court previously summarized:

> The '042 patent issued on August 20, 2013 and . . . discloses "a method for constructing a structure from ice in a low-temperature environment." Dkt. 55-1, at 2, *abstract.* This method includes "providing a plurality of icicles and attaching icicles to each other to form a framework of icicles," growing "additional ice . . . on the framework" and "attaching icicles to each other . . . as needed until the structure is completed." *Id.* In layman's terms, the '042 patent protects a method for making icicles and building structures of ice with those icicles.

Dkt. 66, at 2.

denies infringement.

Following a *Markman* hearing[3] in this case, the Court issued a Memorandum Decision and Order (Dkt. 66) on March 2, 2020, setting forth the construction of certain disputed claim terms of the '042 patent. One of those terms was "icicle(s)." The parties' respective proposed construction of the term icicle(s) are set forth below:

| | Term/Phrase | Ice Castle's Proposed Construction | LaBella Lake's Proposed Construction |
|---|---|---|---|
| 1 | Icicle(s) | "An elongated piece of ice that is formed" | "A hanging, tapering piece of ice formed by the freezing of dripping water" |

In short, LaBelle alleged that the term "icicle(s)" should be given its plain and ordinary meaning, and that that plain an ordinary meaning in this instance is "a hanging, tapering piece of ice formed by the freezing of dripping water." Dkt. 58, at 9. LaBelle argued then (as it does now) that this definition is obvious, supported "by more than a dozen dictionary definitions," and is the quintessential definition of a "plain and ordinary" term in patent descriptions. *Id.* Ice Castles, on the other hand, urged the Court to define the term as simply "an elongated piece of ice that is formed." Dkt. 55, at 18.

After reviewing the language of the patent—and analyzing the parties' arguments from the *Markman* hearing—the Court ultimately concluded that it would simply leave the term icicle(s) as written, it would give the term its plain and ordinary meaning, and *not* define it further. The Court reached this conclusion after finding that Ice Castles' definition was too "open-ended," and LaBelle's definition was too narrow. Dkt. 66, at 25. When all

---

[3] *See generally Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

was said and done, the Court defined each of the seven disputed terms (including icicle(s)) as follows: "defined as written/plain and ordinary meaning." *Id.* at 26.

On March 26, 2020, LaBelle filed a Motion for Partial Reconsideration of the Court's *Markman* ruling and asked the Court to revisit its construction of the term icicle(s).

Shortly thereafter, the parties contacted the Court regarding a discovery dispute they were having regarding whether Ice Castles had been forthcoming in certain responses to discovery. Per the Court's standard practice, the parties submitted position papers to the Court's law clerk and a conference call was held. Following the call, LaBelle filed the Motion to Compel. Dkt. 76. The Court will address each motion in turn.

### III. ANALYSIS

#### A. Motion for Partial Reconsideration (Dkt. 67)

*1. Legal Standard*

LaBelle does not state a rule upon which it bases its request for relief but refers, in passing, to Federal Rule of Civil Procedure 59. *See* Dkt. 67, at 2. This Rule does "permit[] a district court to reconsider and amend a previous order," but the Ninth Circuit instructs that the Rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)).

"[T]here are four limited grounds upon which" a district court may grant a motion for reconsideration: "(1) the motion is necessary to correct manifest errors of fact or law; (2) the moving party presents newly discovered evidence; (3) reconsideration is necessary

to prevent manifest injustice; or (4) there is an intervening change in the law." *Coffelt v. Yordy*, No. 1:16-CV-00190-CWD, 2016 WL 9724059, at *1 (D. Idaho Nov. 30, 2016) (citing *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003)).

   *2. Analysis*

     LaBelle seeks partial reconsideration of the Court's *Markman* ruling. To wit, LaBelle asks the Court to reconsider its construction of the term icicle(s).

     LaBelle contends the Court's *Markman* ruling is flawed for two reasons. First, LaBelle bluntly states that the Court "fail[ed] to properly construe 'icicle.'" Dkt. 67-1, at 9. Second, LaBelle argues that the Court improperly relied on two statements from the '042 patent's specifications. *Id.* at 11. Underpinning this second assertion are arguments that the Court conflated certain claim construction principles and undertook an analysis that was "faulty" in reaching its conclusion. The Court will touch upon these arguments as part of the larger second issue.

     Finally, while not technically an argument in support of reconsideration, LaBelle broadly states that, in light of all the above-mentioned errors, the Court's decision cannot *legally* stand, and its decision basically left the term icicle(s) completely ambiguous. *Id.* at 6.

     The Court will address each argument in turn.

   a. <u>Plain Meaning</u>

     LaBelle begins by arguing that the Court should have given the term icicle(s) its plain and ordinary meaning. As noted above, however, this is exactly what the Court did—it explicitly gave the term icicle(s) its "plain and ordinary meaning." Dkt. 66, at 26. A better

way, then, to phrase LaBelle's argument on reconsideration is that it thinks the Court should have given the term icicle(s) the plain and ordinary meaning *it* wanted and actually defined what that "plain and ordinary meaning" is. This argument, however, is little more than a recitation of LaBelle's prior arguments in support of claim construction and is, thus, improper in a motion to reconsider.

LaBelle brings up again and again that the most common dictionary definitions all reflect the common understanding that an icicle is defined as a "hanging, tapering piece of ice formed by the freezing of dripping water." Dkt. 67-1, at 10, 12, 13. These are the exact same arguments LaBelle raised previously. *See* Dkt. 58, at 5, 9, 17. The Court does not call into question these definitions. In fact, it agrees that this is the *common* understanding and/or definition of icicle. This is a great argument to make to a jury. Critically, however, the Court could not (then), and cannot (now), impart that definition to the term icicle(s) in the '042 patent as it appears the patent *could* encompass a broader definition. This is precisely why the Court noted that "in the absence of a clear alternative [] [to the parties' proposed constructions], the Court must leave the term 'icicle(s)' as written and give it its plain and ordinary meaning." Dkt. 66, at 15.

The Court wishes to unpack that quotation to aid the parties as they move forward. Neither party disputes that "the words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history. . . ." *Thorner v. Sony Computer Entm't*

*Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).[4] This is what the Court tried to illustrate in its prior decision. The Court gave the term icicle(s) its "plain and ordinary meaning" because it could go no further. Now, whether there are some nuances to that plain and ordinary meaning *may* need to be determined at a later date. As part of claim construction, the parties *did not* present the Court with any evidence of what the "customary meaning as understood by a person of ordinary skill in the art [i.e. in the industry]" would be "when read in the context of the" '042 patent. *Id*.[5] Thus, as the Court noted, expert testimony *may* be necessary to outline how people in this particular industry define the term icicle(s) and if that differs from the *common* understanding/definition of that term.

Nevertheless, there may not be any reason to do this, when—as LaBelle repeatedly states—the definition of icicle(s) appears so plain and ordinary. As the Court made clear, at this stage, its intention was to simply leave the term icicle(s) as written, give it its plain and ordinary meaning (as LaBelle asks), and submit the matter to a jury. LaBelle argues this is improper. It is not. As the Court already explained:

> [I]t is not a jury's prerogative to define terms—after all, claim construction is a legal question for the Court—but it is a jury's duty to determine infringement. That is what must occur in this case. The Court may—upon a motion in limine following expert discovery—further define the term icicle or craft an appropriate jury instruction; however, it may simply leave the issues for testimony and evidence at trial. Again, the jury will not be asked

---

[4] As the *Thorner* court went on to explain, there are only two exceptions to this general rule. The first is when a patentee sets out a definition and acts as his own lexicographer. The second is when the patentee disavows the full scope of the claim term. 669 F.3d at 1365. As the Court explained in its prior decision, however, neither of those exceptions apply in this case. Dkt. 66, at 12–13.

[5] Because neither party presented such evidence, the Court explicitly stated it would be willing to revisit its definition given an appropriate showing. Here, however, LaBelle has not made any such showing; it has simply reiterated its prior arguments.

> to strictly define the term within the patent, but it would take the testimony
> and evidence in favor of the opposing definitions into consideration when
> determining whether there has been infringement in this case.

Dkt. 66, at 15, n.8. This approach sounds in caselaw. *See, e.g., ActiveVideo Networks, Inc.*

*v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) (affirming the district

court's decision that the terms at issue would be given their plain meaning without

additional construction and that "it was up to the jury to determine from the evidence

presented at trial whether the [disputed product] satisfied the plain and ordinary meaning

of the [] limitations"). The Court will not be submitting a *legal* question to the jury—*i.e.*,

asking the jury *what* the term icicle(s) means—but rather a factual question of whether,

based upon the evidence presented, and in light of the plain and ordinary meaning of the

term icicle(s), LaBelle infringed the '042 patent. Again, doing so is completely proper.

    In short, the Court will not revisit its definition of the term icicle(s) and impart any

dictionary definitions into its claim construction. These arguments were already raised,

argued, analyzed, and rejected. The Court sees no reason to disturb its decision on the

matter.

    b.  <u>Statements in the Record</u>

    Second, LaBelle claims the Court impermissibly relied on two statements from the

specification and then conflated the claim construction analysis under prevailing caselaw

in order to reach its conclusion.

    The two statements LaBelle believes the Court impermissibly relied on come from

the '042 patent and state the "formation of icicles may occur in a variety of fashions" and

that icicles "may be formed in any of a variety of fashions." Dkt. 66, at 5–6 (citing Dkt.

55-1, at 2:19; 2:41–42). The Court referred to these examples and concluded the '042 patent extended beyond simple "natural ice growth" (and, thus, LaBelle's suggested definition).[6] LaBelle regurgitates its prior arguments that, while there may be a variety of ways to form the icicles, each, nevertheless, falls under the "drip methodology." The Court has already rejected this argument and discussed at length its reasoning for doing so. Dkt. 66, at 8–12. The Court referred to the above examples from the '042 patent and explained a "longstanding tenant of claim construction—although sometimes difficult to apply in practice—that limitations or examples discussed in the specifications of the patent may not be read into the patented claims themselves." *Id.* at 8. The Court went on to hold that while the examples and embodiments in the '042 patent were largely homogeneous, it could not impart those into the claim/s and narrow the scope of the patent. The Court cited numerous cases and explained this concept in depth. *Id.* at 8–11. It will not reiterate those points here.

LaBelle argues, however, that in considering these examples and analyzing the distinction between embodiments and claims, the Court "never complete[d] the fundamental step of determining the ordinary meaning of 'icicle.'" Dkt. 67-1, at 6. In LaBelle's estimation, the Court "subtl[y] shift[ed]" its analysis, never completed the first "defining" step, and introduced a new topic—disavowal—that neither party raised. *Id.*

LaBelle is, in part, correct. Neither party raised disavowal as part of its *Markman*

---

[6] Critically, the Court referred to other language from the '042 patent illustrating this principle as well. *See, e.g.,* Dkt. 66, at 7 (outlining how the Description was clear that the example outlined in figure three was "one method" and that the phrase "one method" indicated there were other methods); *Id.* at 11–12 (explaining the apparent difference between Claim 1 and Claim 2—and the icicle formation process—based upon the language of the patent).

briefing. That said, neither did the Court. The word "disavowal" does not appear in the Court's decision a single time. And for good reason; it was not at issue. The Court quoted extensively from *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005), and discussed whether, when, and how limitations and/or specifications can be read into claims. While such a discussion may have been overly broad, the Court's reasoning for doing so was accurate. LaBelle's position—that icicle formation in the '042 patent is exclusive to one method—draws on principles that are squarely addressed in *Phillips* (and the numerous other cases cited by the Court). The Court's whole purpose in undertaking such an exhaustive review of whether limitations from preferred embodiments could be read into the claims was because this was essentially LaBelle's argument—that the preferred embodiment was the sole methodology and any "other methods" were just variations on that embodiment.

What's more, because LaBelle relied on the concept of limitations in crafting its definition of "icicle(s)," the Court's analysis of the same played into its finding that the term icicle(s) should be given its plain and ordinary meaning. Said differently, the Court did not jump over, or abandon, the first step in its analysis, but rather considered the above arguments and explained how they played into the Court's decision on how to define the term. To reiterate, however, the Court did not "shift" any burden or impermissibly analyze something it should not have in reaching its conclusion.

c. Ambiguity

Finally, LaBelle argues that, when all is said and done, the Court basically didn't do anything in its *Markman* ruling. Yes, the Court left the claim icicle(s) as written and gave

it its plain and ordinary meaning. But, because the Court also expressed skepticism about how the term might or might not be defined (in practice, by an expert, or before a jury), LaBelle asserts the Court essentially (or subtly) found that the term icicle(s) was "completely ambiguous" when read in the context of the '042 patent. The Court disagrees.

Lest it go unnoticed, the Court was equally critical of Ice Castles' arguments in favor of its proposed claim construction as it was of LaBelle's proposal. Frankly—as the Court noted—there was no "clear alternative" to leaving the term icicle(s) as written in the '042 patent and giving it its plain and ordinary meaning. The Court was not comfortable following LaBelle's proposal as it was too narrow. The Court was also unwilling to accept Ice Castles' proposal as it "could impermissibly expand the scope of the patent itself." Dkt. 66, at 14. Such a finding, however, does not mean the term is ambiguous.[7] As the Court stated, the critical definition is how the term is understood by an ordinary person skilled in the art. Unable to determine what that would be from the intrinsic—as well as limited extrinsic—evidence at that time of the *Markman* hearing, the Court simply left the term as written.

To reiterate, however, the Court clearly stated either party could bring this matter up again once expert testimony had been obtained. *Id.* at 15 n.8; 25. Interestingly, LaBelle appears to agree. In its reply brief, LaBelle argued its motion to reconsider is proper

---

[7] The concepts of ambiguity, indefiniteness, and disavowal are weighty concepts in intellectual property law. LaBelle has, to some degree, implicated all of these concepts in its briefing. However, it has not actually brought any such motions. If LaBelle believes any of those concepts apply to this case, it is welcome to raise them; however, doing so as passing references does not provide the Court enough information to make a reasoned decision. In short, the Court takes no position on the merits of any arguments regarding ambiguity, indefiniteness, and disavowal at this time.

because a court can "revisit and alter its interpretation of the claim terms as its understanding of the technology evolves." Dkt. 71, at 11–12 (citing *Pressure Prod. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010)) (cleaned up). This is exactly what the Court explained could happen in this case. However, LaBelle's current motion does not do that. There is no evidence in the record indicating how a person of ordinary skill in the art would define "icicle(s);" no declarations, deposition testimony, or affidavits on the topic. Nor could there have been. Discovery had not even begun when LaBelle filed its motion to reconsider. That is precisely why the Court stated that if it were to revisit the issue, if at all, it would likely be "following expert discovery." Dkt. 66, at 15 n.8.

Now, the above is not an invitation to derail the current posture of the case to relitigate this issue. The Court is simply noting such a course of action may be appropriate.

Ultimately, the Court concludes where it began. In its prior ruling, the Court did exactly what LaBelle now asks it to do: it defined the term icicle(s) by its plain and ordinary meaning. LaBelle, however, asks the Court to go a step further and import limitations into that definition that are not clearly supported by the specifications of the '042 patent. At this stage, the Court's intent is as it was originally. Because neither side convinced the Court its definition was appropriate, AND because the term icicle(s) is not difficult to understand, the Court will leave it as written and present it to a jury without further construction. The jury will *not* decide the definition of the term, but will decide if—under the plain and ordinary meaning of the term icicle(s), and against the backdrop of facts presented by the parties—LaBelle infringed the '042 patent.

MEMORANDUM DECISION AND ORDER - 12

In conclusion, the Court finds LaBelle has not raised anything new warranting reconsideration of its prior order. What's more, even reviewing (anew) what has been submitted the Court will not change the Court's prior analysis and findings. LaBelle's Motion for Partial Reconsideration is DENIED. The construction of the term icicle(s) shall remain: defined as written/plain and ordinary meaning.

### B. Motion to Compel (Dkt. 76)

#### 1. Background

Near the end of June 2020, the parties contacted the Court's law clerk with various disputes they were having regarding discovery. On July 7, 2020, the Court and the parties held an informal conference call to try to resolve matters. A resolution was not reached.

Thereafter, on July 24, 2020, LaBelle filed a Motion to Compel. Dkt. 76. Ice Castles opposed the motion but also supplemented some of its discovery responses. Despite this simultaneous supplementation, LaBelle continues to assert Ice Castles has failed to appropriately respond to some of its Requests for Admission, Requests for Production of Documents, and Interrogatories.

#### 2. Legal Standard

Discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information "need not be admissible in evidence to be discoverable." *Id.* A party may move for an order compelling a discovery response pursuant to Federal Rule of Civil Procedure 37(a)(3)(B).

Under Federal Rule of Civil Procedure 37, a party may move to compel discovery

responses if, among other things, an opposing party fails to answer interrogatories or produce requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). "While the moving party must make a threshold showing of relevance . . . the party resisting discovery carries the heavy burden of showing specifically why the discovery request is irrelevant, unduly burdensome, disproportional to the needs of the case, or otherwise improper." *Strojnik v. Block 22 LLC*, No. 1:18-cv-00556-BLW, 2019 WL 6315523, at *2 (D. Idaho Nov. 25, 2019) (cleaned up).

### 3. Discussion

The Court will take up each area of concern separately as there are some nuances between the objections depending on the category of discovery at issue. The Court begins by noting that this motion was filed just shy of one year ago. Discovery has been ongoing. The Court does not know if Ice Castles has further supplemented its responses and/or if LaBelle has withdrawn any of its requests. Regardless of any potential changed circumstances, the Court will analyze the issues as presented and the parties can undertake further action if necessary. Additionally, while LaBelle uses examples in its briefing, it groups large swaths of requests together and simply asks the Court to compel responses without any specific argument or explanation. Particularly problematic are LaBelle's assertions in relation to its Interrogatories. The briefing on these matters is barely two paragraphs total (Dkts. 76-1, at 6; 85, at 10), uses one example in support, and then claims: "Defendants have repeatedly failed to give responsive answers to the Interrogatories." *Id.* The Interrogatories are related to each other to be sure; however, providing some argument as to specific requests and/or highlighting relevance, admissibility, proportionality, etc.

MEMORANDUM DECISION AND ORDER - 14

would have been helpful for the Court. Without specific arguments as to specific requests it is difficult for the Court to make specific findings. Nevertheless, the guiding principles below can be applied to most of the disputes.

    a.  <u>Requests for Admission</u>

First, LaBelle argues that in some instances, Ice Castles objected to certain requests based upon the fact that such a response would implicate claim construction or call for a legal conclusion. With claim construction settled—and the above motion to reconsider denied—no such objections are warranted. If Ice Castles has not supplemented these responses, it should do so immediately.

Second, LaBelle contends that Ice Castle's response to many requests that "the [item] speaks for itself" is evasive and not a substantive admission or denial that can be used to narrow issues for trial. Ice Castles responds by pointing out that some of LaBelle's requests seek opinions on matters that are not in its custody or control and that it should not have to be forced to engage in third-party discovery. Furthermore, Ice Castles contends that, although seemingly mundane, some of LaBelle's requests are unnecessarily complicated/compound or are crafted in such a way that would allow LaBelle to "contort" Ice Castles' response to attack the '042 patent. On these matters, the Court agrees with Ice Castles.

To be sure, some of Ice Castles responses seem overly cryptic and unnecessary. By way of example, LaBelle's Request for Admission No. 3 requests: "Admit the *Daily Herald* published an article . . . dated January 28, 2009 about the Early 2009 Ice Castle." Dkt. 76-2, at 2. Ice Castles originally objected on the grounds that the request called for a legal

conclusion and was vague and ambiguous. *Id.* It nevertheless admitted "the article . . . speaks for itself." Ice Castles then supplemented its response stating its further objection that the requests seeks information outside of its possession, custody, and/or control but admitted "the *Daily Herald* Article, as produced by the Defendants as LABE00203, list[s] a publication date of January 28, 2009." *Id*. This request in particular appears truly mundane. Ice Castles does not seem to dispute the Article or its date of publication. But for some reason, it cannot say that. It hedges its response by saying that the document lists that date so it must be so, but it does not affirmatively admit the same.

On similar requests, Ice Castles contends that subsequent deposition testimony has confirmed the information so LaBelle now knows the answer and it doesn't need to supplement any responses. While it is beneficial that deposition testimony has settled some of these disputes, the question is still whether Ice Castles' responses are sufficient. A party cannot simply refuse to answer or timely supplement discovery requests in the hopes that deposition testimony will clear up anything it doesn't want to address. Likewise, this approach is out of order. Depositions can and should clarify discovery responses; however, depositions should not have to occur *before* a responding party answers a straightforward discovery request. In sum, the Court finds that Ice Castles' calculated responses to some of the requests were (and still are) overly complicating simple matters. It should respond

to basic questions with an appropriate supplemental admit or deny response.[8] Its supplemental responses get close to this admonition, but as outlined above, hold back from a clear admittance or denial. Such strategy is unnecessary.[9] To be sure, it appears Ice Castles was trying to be helpful by still answering requests even though it did not think such was required. That said, the "speaks for itself" response (particularly followed by a lingering denial in many circumstances) appears to have muddied, rather than clarified, matters.

In short, there are a number of Requests for Admission that ask simple, straightforward questions about news articles, their dates of publication, and/or what was represented in those articles. These requests are nothing more than foundational. They deserve a simple, straightforward response. Other requests may require a little work, but if they are related to Ice Castles and/or Christensen, it can hardly be said that looking into the matter is "third-party discovery." Ice Castles should review these requests and provide updated, responsive, and candid responses.

---

[8] Ice Castles' point that LaBelle may twist its responses to fit a particular narrative is not meritless, but doesn't warrant stonewalling. The nature of litigation is that parties will use information to their advantage—such is par for the course. More importantly, however, Ice Castles will always have an opportunity to explain its position, argue the weight any particular evidence should have, and analyze LaBelle's arguments.

[9] Citing cases, LaBelle argues "the assertion that documents speak for themselves is merely a favorite excuse for not answering requests for admission that is not supported by Rule 36(a)." Dkt. 76-1, at 2 n.1 (citing *United States DOL v. La Familiar Corp.* 2012 WL 1906508 (D. Kan. 2012) (cleaned up). The Court agrees in part. The response that an item "speaks for itself" has its place. In some instances for example— such as in this case when Ice Castles does not know a particular fact for sure, but does not have any reason to dispute it—the response is appropriate. These instances, however, should be limited. The phrase is often cryptic and, as explained above, over-complicates matters. A party should simply take a position: admit or deny.

The above aside, some of LaBelle's other requests are truly compound or delve into highly technical matters. Request for Admission No. 34 is a good example of this.[10] Besides having roughly six subparts, this request uses nuanced terms from the '042 patent that would require much more than a simple admittance or denial. Ice Castles attempts to answer some of these technical questions by offering alternate wording; however, LaBelle casts this reframing as obfuscating and states Ice Castles can simply admit or deny the various subparts—whether they are one large compound question or individual questions.

In these instances, the Court is not as concerned with whether the requests are combined or separate (although separating them out would be easier to digest) as it is with the technical nature of the terms at issue. With these compound and complicated requests, the Court will not compel a response. If LaBelle wishes, it can reframe and/or separate out the various subparts to provide Ice Castles a clear picture of what it is seeking.

b.  Requests for Production

Similar to the above, LaBelle asserts that Ice Castles has "repeatedly stated that it will produce responsive documents, but has failed to identify which documents it believes are responsive to the request." Dkts. 76-1, at 5; 85, at 9. Unlike the above, however, that is the extent of LaBelle's argument in support of compelling responses. For its part, Ice Castles claims that it identified what it could at the time, and continues to supplement as

---

[10] Request No. 34: "Admit that in creating the Early 2009 Ice Castle, Christensen placed a first icicle in a vertical configuration, placed a second icicle in a vertical configuration, and then attached a third icicle to the first icicle and the second icicle by applying a slush mixture to the first and second icicles, contacting the third icicle the slush applied to the first and second icicles, and maintaining the relationship of the first, second and third icicles until the slush froze sufficiently to secure the icicles to each other and so that there was a space formed below the third icicle."

more information comes to light. Supplementation is critical in every case and the Court encourages ongoing supplementation. Here, it appears Ice Castles did supplement. With discovery now complete, it appears a final supplementation *might* be necessary. Ice Castles should do so.

The Court wishes to highlight one of Ice Castles arguments that has been a recurring theme in response to many of LaBelle's objections—including to some of these Requests for Production.

Ice Castles repeatedly asserts that it should not have to engage in third-party discovery or provide information that is outside of its possession, custody, or control. This is an accurate principle of discovery and a valid objection. That said, it appears Ice Castles does have access (or could gain access) to some of this information with minimal effort—its valid argument against production notwithstanding. This hearkens back to the Court's comments that Ice Castles appears to be overthinking these early discovery mechanisms. For example, Request for Production No. 1 seeks images which were on the website flyingwrech.com prior to January 10, 2010. Ice Castles responded by noting that the flyingwrench.com website was sold a number of years ago, and that it was created and maintained by a non-party, Andy Goddard, during the time period in question. Ice Castles later supplemented its response directing LaBelle to any documents that may have been produced by Goddard (who was subpoenaed by LaBelle for said information). The Court is not implying that Ice Castles was incorrect in its response. However, it is also not a stretch to assume it could have easily obtained and verified the information without LaBelle having to resort to a third-party subpoena or engaging in "third-party discovery." Even if

Ice Castles no longer owns the website, it did (presumably) at the time in question and could, nonetheless, verify and respond accurately to the request. In addition, even if Goddard created and maintained the website, he (again, presumably) did so under Christensen's direction and that information, too, could have easily been shared with LaBelle—even now, some years later. In short, Ice Castles response to this Interrogatory (and its similar responses to other discovery requests), while not improper, appear unnecessary. The Court is not advocating a deviation from the rules of discovery or imposing an onerous burden on Ice Castles. It is simply suggesting that with some effort, Ice Castles likely could have responded to these requests without engaging in true "discovery."

Again, however, now that formal discovery has concluded, there should be little room for doubt on where Ice Castles stands on these matters and what materials it can and cannot produce. Supplementation, as appropriate, should take place right away.

c.  <u>Interrogatories</u>

As mentioned, LaBelle's arguments on these matters are particularly short. In essence, it claims Ice Castles failed to identify people who took photographs of the Early 2009 Ice Castle and/or failed to identify documents and communications on the same. After discovery commenced, it appears Ice Castles supplemented its responses to some of these

Interrogatories.[11] Now that discovery has concluded, the Court can only assume that any outstanding questions can be definitively answered. Ice Castles should review and supplement as necessary to ensure accurate and complete response to LaBelle's Interrogatories.

 d. <u>Conclusion</u>

  The Court does not ordinarily analyze individual discovery requests unless specifically called upon to do so. Here, LaBelle pointed to dozens of Requests for Admission, multiple Requests for Production, and some Interrogatories and asked the Court to wholesale compel proper responses. The Court cannot do this, however, without specific targeted arguments.

  That said, the Court has outlined some guiding principles above which the parties can utilize moving forward. Ice Castles should withdraw any objections based upon claim construction, it should streamline its answers to a simply admit or deny where possible, and it must supplement with information obtained during discovery where necessary. LaBelle, however, must revise any requests that are compound and/or utilize vague, ambiguous, or highly technical terms—should it still wish a response.

  As always, if there are *individual* requests still at issue, they can be brought to the Court's attention with individual arguments.

---

[11] Even then, it is hard to know if LaBelle is satisfied with Ice Castles' supplementation. While originally referencing Interrogatories 3, 4, 6, 7, 10, and 14 (Dkt. 76-1, at 6), LaBelle, in its Reply brief, only referred to Interrogatories 3, 10, and 14 (Dkt. 85, at 10). The Court does not know if this means LaBelle is satisfied with Ice Castles' supplementation as to the other Interrogatories, or if it is still pursuing additional responses.

## VI. ORDER

The Court hereby orders as follows:

1. LaBelle's Motion for Partial Reconsideration (Dkt. 67) is DENIED. The Court defines the term icicle(s): as written/plain and ordinary meaning.

2. LaBelle's Motion to Compel (Dkt. 76) is GRANTED in PART and DENIED in PART as outlined above. To keep the case moving forward, Ice Castles' review of LaBelle's requests (and any supplementation) should occur within 14 days of the date of this order.

DATED: July 19, 2021

David C. Nye
Chief U.S. District Court Judge