UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ICE CASTLES, LLC, a Utah Limited Liability Company,<br><br>     Plaintiff,<br><br>     v.<br><br>LABELLE LAKE ICE PALACE, LLC, an Idaho Limited Liability Company; and LABELLE LAKE, LLC, an Idaho Limited Liability Company,<br><br>     Defendants. | Case No. 4:18-cv-00571-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant LaBelle Lake Ice Palace, LLC, and LaBelle Lake, LLC's (collectively "LaBelle") Renewed Motion for Bond. Dkt. 96. In conjunction with this motion, both parties filed Motions to Seal (Dkts. 97, 103).

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court finds good cause to DENY the Renewed Motion for Bond, but it will GRANT both Motions to Seal.

## II. BACKGROUND

Shortly after Ice Castles, LLC ("Ice Castles") filed suit, LaBelle filed a Motion for Bond. Dkt. 16. In its original motion, LaBelle asserted that, under Idaho Code section 48-1701 *et seq.*, Ice Castles must post a sufficient monetary bond to ensure the integrity of its patent suit. Ice Castles opposed the motion. Dkt. 22.

On June 4, 2019, the Court held a hearing on LaBelle's Motion for Bond—as well as another motion. Thereafter, the Court issued a decision denying without prejudice LaBelle's Motion. Dkt. 54. The Court drew out the fact that there were no cases (state or federal) addressing or interpreting the statute at play in LaBelle's motion which gave it pause. *Id.* at 5. The Court went on to explain its uncertainty as to whether it had the jurisdictional authority or statutory authority to apply Section 48-1701 in this case and/or more broadly if Section 48-1701 applied in federal patent cases at all. *Id.* at 8. The Court ultimately determined that LaBelle was "free to pursue a similar motion in State Court—if it desires—or refile the Motion with this Court at a later date; provided it can clearly articulate why and how the Court has jurisdiction to hear such a claim." *Id.*

Close to one year later, LaBelle filed the instant Motion asking the Court, once again, to require that Ice Castles post a bond pursuant to Section 48-1701. As it had initially, Ice Castles opposed LaBelle's Motion.

## III. LEGAL STANDARD

In 2014, the Idaho Legislature passed Idaho Code section 48-1701 *et seq.*, titled "Bad Faith Assertions of Patent Infringement," in an attempt to "facilitate the efficient and prompt resolution of patent infringement claims, protect Idaho businesses from abusive

and bad faith assertions of patent infringement and build Idaho's economy, while at the same time carefully not interfering with legitimate patent enforcement actions." Idaho Code § 48-1701(2).

Under the statute, the Court may consider numerous factors when determining whether a party has made a bad faith assertion of patent infringement including the following:

> (a) The person sends a demand letter to a target without first conducting an analysis comparing the claims in the patent to the target's products, services or technology.
> (b) The demand letter does not contain the following information:
>> (i) The patent number;
>> (ii) The name and address of the patent owner or owners and assignee or assignees, if any; and
>> (iii) The factual allegations concerning the specific areas in which the target's products, services and technology infringe the patent or are covered by the claims in the patent.
>
> (c) The demand letter does not identify specific areas in which the products, services and technology are covered by the claims in the patent.
> (d) The demand letter demands payment of a license fee or response within an unreasonably short period of time.
> (e) The person offers to license the patent for an amount that is not reasonably based on the value of a license to the patent.
> (f) The person asserting a claim or allegation of patent infringement acts in subjective bad faith, or a reasonable actor in the person's position would know or reasonably should know that such assertion is meritless.
> (g) The claim or assertion of patent infringement is deceptive.
> (h) The person or its subsidiaries or affiliates have previously filed or threatened to file one (1) or more lawsuits alleging patent infringement based on the same or similar claim, the person attempted to enforce the claim of patent infringement in litigation and a court found the claim to be meritless.
> (i) Any other factor the court finds relevant.

Idaho Code § 48-1703(2)(a)–(i). In addition, the Court may consider the following factors as evidence that a person or entity *has not* made a bad faith assertion of patent infringement:

> (a) The person engages in a good faith effort to establish that the target has

  infringed the patent and to negotiate an appropriate remedy.
(b) The person makes a substantial investment in the use of the patent or in the production or sale of a product or item covered by the patent.
(c) The person has:
  (i) Demonstrated good faith in previous efforts to enforce the patent, or a substantially similar patent; or
  (ii) Successfully enforced the patent, or a substantially similar patent, through litigation.
(d) Any other factor the court finds relevant.

Idaho Code § 48-1703(3)(a)–(d).

Ultimately, if a court finds a "reasonable likelihood" that the claimant's patent infringement claim was asserted in bad faith, the court shall require the claimant to post a bond in an amount equal to a good faith estimate of the target's expenses of litigation, including an estimation of reasonable attorney fees. Idaho Code § 48-1707. Finally, "the court may waive the bond requirement if it finds the person has available assets equal to the amount of the proposed bond or for other good cause shown." *Id.*

## IV. ANALYSIS

As noted, the Court denied LaBelle's prior Motion for Bond without prejudice and indicated it would entertain a renewed request in the event LaBelle could "clearly articulate why and how the Court has jurisdiction" to hear this type of motion. Dkt. 54, at 8. In its renewed Motion for Bond, LaBelle devotes some time to the legal concerns the Court previously raised, but focuses mostly on Ice Castles' behavior—during the process of obtaining United States Patent No. 8,511,042 ("the '042 patent") and immediately preceding this litigation—and argues why those actions qualify as "bad faith" under Section 48-1701 and require the imposition of a bond. For its part, Ice Castles contends that the Court's legal concerns are still present, but that even if it were to take the matter

up, LaBelle cannot meet its burden under the statute. The Court will address each area of concern in turn.

### A. Legal Availability of Section 48-1701 in Federal Court

At the outset, the Court wishes to point out that it never found it lacked jurisdiction over any Idaho state law *claims* in this action, but only that it possibly lacked jurisdiction to implement an Idaho state statute in this federal action. *See* Dkt. 54, at 6 (stating that the Court has "pendent, or supplemental, jurisdiction under 28 U.S.C. § 1367 over th[e] state claims as they are related to the federal claims"). LaBelle explains in its briefing (Dkt. 96-1, at 20) that the Court has supplemental jurisdiction over the state-law claims in this case and, as a result, it should enforce the bond requirement as substantive state law. While the Court will address this issue shortly, it reiterates that it fully agrees with LaBelle's initial premise. That is to say, it has always had jurisdiction over all claims in this case (federal and state), it simply did not know if it could enforce Section 48-1701 in this case.

The Court previously cited the seminal case *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), and explained that when sitting in diversity jurisdiction federal courts apply state substantive law and federal procedural law. *Id.* at 6. The Court did not definitively decide at that time whether Section 48-1701 was procedural or substantive, but briefly discussed the nuanced language of Section 48-1701, reviewed some of its requirements that appeared directed at state—rather than federal—officials, and concluded there was a "lack of clarity in how a party could procedurally bring a claim under [the] statue." *Id.* at 7. Because of this lack of clarity, the Court declined to address the merits of LaBelle's arguments and simply denied the motion without prejudice.

MEMORANDUM DECISION AND ORDER - 5

In its current briefing, LaBelle argues Section 48-1701 is substantive state law and, therefore, the Court may consider (and impose) the bond requirement in this case. Ice Castles, on the other hand, argues that while the overall statute itself is substantive, the bond requirement is simply a means of enforcing the statute and is, therefore, procedural. Furthermore, because the bond requirement is simply procedural, it ultimately cannot be utilized in federal court. Both parties cite out-of-circuit federal district court cases and out-of-state state supreme court cases in support of their varying interpretations.

By in large, the Court is still left wanting. While reasonable minds could differ on this question, it does seem that the bond requirement itself is simply a *procedural* mechanism of enforcing a *substantive* state law statute. However, it is not a stretch to say that enforcement is part and parcel to any substantive right and breaking the statute up in such a manner is unwarranted. And, as before, in the absence of *any* written commentary or legal authority analyzing Section 48-1701, the Court is loath to wade into this vexing question. The Court agrees with Ice Castles that LaBelle has not—in accordance with the Court's prior order—"clearly" shown how the Court can utilize Section 48-1701. That said, the Court also cannot confidently say that LaBelle is wrong. Analyzing the varying cases cited in the parties' briefs does little to solve the issue either, as none of them are binding on the Court. Therefore, the Court assumes, without formally deciding, that it can apply Section 48-1701 in this case. The Court takes this route not as a dereliction of its duty, but because it strives to also address the merits of any question before it. And in this case, even

when looking at the merits of the motion, it cannot find in LaBelle's favor.[1]

B. Section 48-1701 Factors

One of the more difficult aspects of the current motion is that LaBelle's position in support of a bond is based—at least in large part—on theories that are not yet fully developed. As mentioned, LaBelle spends the bulk of its brief addressing factual matters that, in its opinion, support a finding of bad faith. Ice Castles vehemently opposes LaBelle's characterization of prior events. While some of LaBelle's arguments are compelling, the Court cannot make a definitive finding of bad faith at this stage of the case. And to be fair, it need not. The statute simply states the Court's duty is to determine if there is "a *reasonable likelihood* that a person has made a bad faith assertion of patent infringement." Idaho Code § 48-1707 (emphasis added). In order to do this, the Court will review the enumerated factors.

Before doing so, the Court reiterates that, as has been noted, Idaho Code section 48-1701 *et seq.* has never been invoked—let alone interpreted—in any state or federal court proceedings. As a result, there is nothing to compare Ice Castles' behavior (or lack thereof) to and the sufficiency of each requirement is, therefore, left to the discretion of the Court.

A final comment about Idaho Code Section 48-1701 before delving into the individual factors. Ice Castles originally asserted that the whole purpose behind Section 48-1701 was to prevent patent trolls—business entities that obtain patent rights for the sole

---

[1] Ice Castles also puts forth a good argument regarding "preemption" as it relates to attorney fees in federal patent cases. Again, while compelling, at this point the Court wishes to address the merits of LaBelle's motion as that will definitively put the matter to rest—other good arguments notwithstanding.

MEMORANDUM DECISION AND ORDER - 7

purpose of obtaining licensing fees through coercive threats of litigation—from harassing Idaho businesses. Dkt. 22, at 2. Because it is a singular company suing another singular company (unlike the typical tactics of a patent troll who sues thousands of companies all at once based upon fringe theories and unreasonable demands), Ice Castles asserted that the Idaho Legislature likely did not intend for this statue to apply to circumstances such as those found here. Ice Castles does not re-raise this particular argument in its current brief. The Court does not know what the Idaho Legislature's reasoning was for enacting Section 48-1701. Again, however, it assumes without deciding that Section 48-1701 would apply to situations other than just "patent trolls." The Court turns to its review of the relevant factors.

(a) Demand letter without conducting an infringement analysis[2]

LaBelle first asserts that Ice Castles never conducted an infringement analysis as required, but simply sent unsupported cease and desist letters mandating immediate action. Ice Castles strongly denies this allegation and states that the whole point of sending the letters was to illustrate that *it had* performed an analysis of LaBelle's attraction—via pictures, videos, descriptions on websites, and local news coverage—and legitimately believed LaBelle's methods infringed on the '042 patent. For example, Ice Castles letter of January 5, 2018, outlined:

> The claims of the '042 Patent generally cover a "method for constructing a structure from ice in a low-temperature environment" which involves attaching icicles to each other to form a framework and then growing

---

[2] The Court has titled each subheading herein to correspond to the same statutory subheading for readability (*i.e.*, subsection "(a)" in this decision references subsection "(a)" in the statute). Thus, there may be gaps within the headings depending on whether or not the parties addressed those specific factors.

MEMORANDUM DECISION AND ORDER - 8

> additional ice on the framework. Some of the claims specify that the additional ice is grown by spraying water onto the framework.
>
> Having reviewed your website and Facebook page, it is quite clear that you are using the patented technique to build an ice structure at LaBelle Lake. Your building of the ice structure therefore constitutes patent infringement.

Dkt. 96-7, at 2–3. While the letter is not, by any means, all-inclusive of Ice Castles' claims against LaBelle, it does include a brief summary of its position and why it believes LaBelle is infringing on its patent. Importantly, the letter also explains that Ice Castles has "reviewed" certain information in reaching its conclusions.

LaBelle responds by arguing that Ice Castles has never said exactly how (*i.e.*, in what manner) its methodology infringes on the '042 patent and that it did not conduct an "element-by-element" analysis. As a result of these deficiencies, LaBelle contends the demand letters fall short of the mark. Such an exhaustive explanation, however, is not required.

The statute states that a demand letter cannot be sent "without first conducting an analysis comparing the claims in the patent to the target's products . . . ." Idaho Code § 48-1703(2)(a). It does not, however, require that the claimant turn over its analysis (or even explain what it did exactly), only that it performed an analysis. To be sure, this is a subjective standard that would be hard to monitor, but, in this case, Ice Castles represents that it conducted such an analysis, it briefly reviewed that analysis (including references to specific claims) and explained how it thought LaBelle's actions constituted infringement. Ice Castles compliance with this requirement cuts against a finding of bad faith.

    (b) Relevant information within the demand letter

MEMORANDUM DECISION AND ORDER - 9

Subsections (i) and (ii) of factor (b) direct that any demand letter must contain the patent number and the name and address of the patent owner and/or assignee. Ice Castles' January 5, 2018 letter clearly lists the patent number at issue and that Ice Castles—or more particularly its founder, Brent Christensen—developed the patented process. The letter does not contain Ice Castles' business address (but only Ice Castles' legal counsel's contact information); however, it is clear LaBelle knew how to contact Ice Castles—as it had done so before. These informational factors also cut against a finding of bad faith.

However, unlike the Court's finding that subsection (a) did not require a detailed explanation of infringement, subsection (iii) of factor (b) requires "the factual allegations concerning the *specific areas* in which the target's products, services and technology infringe the patent or are covered by the claims in the patent." Idaho Code § 48-1703(2)(b)(iii) (emphasis added).

In its demand latter, after briefly reviewing the '042 patent and what it "generally cover[s]," Ice Castle simply stated that "it is quite clear that you are using the patented technique (referring to the '042 patent) to build an ice structure at LaBelle Lake." Dkt. 96-7, at 2.

Whether this is sufficient for Section 48-1703's purposes is difficult to say. On the one hand, while this explanation is brief, it does cover the "specific areas" Ice Castles believes LaBelle Lake is infringing on its '042 patent (i.e. the patented technic to build their ice structures). On the other hand, to say that this single sentence adequately explains the "factual allegations" of Ice Castles position, or that it adequately addresses how LaBelle's methodology infringes on the '042 patent, seems illogical. This sub-factor

MEMORANDUM DECISION AND ORDER - 10

weighs in favor of a finding of bad faith as LaBelle was left to bridge the gap between Ice Castles' explanation that after simply having reviewed LaBelle's website and Facebook page (among other things), it determined LaBelle's structure "constitute[d] patent infringement." *Id.*

(c) Scope of infringement

Similar to the above analysis, it is difficult to determine if Ice Castles' demand letter sufficiently identified the ways in which LaBelle's actions infringed the '042 patent or are otherwise covered by the claims in the patent. While the alleged infringement is fairly straightforward—that the patented method of constructing an ice structure using icicles has been violated—it is difficult to find that Ice Castles' conclusory statements that "it is quite clear that you are using the patented technique" and "your building of the ice structure therefore constitutes patent infringement," with nothing more, satisfies this requirement.

True, Ice Castles reviewed some limited public information—thus its claims were not conjured up without basis—but it seems the statute requires more specifics than what Ice Castles has presented here. Like the previous sub-factor, this factor weighs in favor of bad faith as the description within the demand letter is severely lacking in specifics.

(d) Time to respond

Idaho Code section 48-1703(d) outlines that a demand letter cannot demand payment, or a response, within an "unreasonably short period of time." The statute does not define what constitutes an "unreasonably short period of time."

Ice Castles claims that regardless of how the time period is calculated, its actions have not been unreasonable because it did not file the instant suit until approximately one

year after it sent its cease-and-desist letters "demand[ing] that [LaBelle Lake] immediately cease building and operating the [attraction]." Dkt. 96-7, at 3. This argument, however, misses the mark. While Ice Castles may not have filed suit for many months, it demanded "immediate" action from LaBelle Lake. This hardly seems reasonable and weighs slightly towards a finding of bad faith.

If the Court were to determine that alleged infringers must immediately cease all activities or risk running afoul of some timing requirement, claimants would have an unyielding sword to use when asserting infringement. A defined time period of a few weeks to investigate seems to be a more reasoned approach. On the flip side, however, such a firm and time-sensitive request is the whole purpose of a cease-and-desist letter—to get a person or entity to immediately stop infringing behavior. This particular subsection does seem directed more toward patent trolls who unreasonably require immediate payment to avoid litigation. Regardless, the Court does not find this particular factor overly persuasive to either side.

(f) Bad faith[3]

As noted at the outset of this section, LaBelle's bad faith arguments are difficult to digest at the current juncture as they are highly fact driven. Additionally, LaBelle's arguments on this topic are directed more towards Ice Castle's purported bad faith in

---

[3] The Court finds this factor particularly relevant. While the Court has determined that some of the prior factors support a finding of bad faith, those findings were, to some degree, determined in isolation and turned on whether Ice Castles complied with certain technical requirements. This factor, however, asks more broadly whether "the person asserting a claim or allegation of patent infringement acts in subjective bad faith, or a reasonable person actor in the person's position would know or reasonable should know that such assertion is meritless." Idaho Code § 48-1703(2)(f). The Court will give more weight to this factor as it strikes at the heart of the statute's purpose.

MEMORANDUM DECISION AND ORDER - 12

*obtaining* the '042 patent, as opposed to bad faith in asserting infringement. In essence, LaBelle contends that Ice Castles assertion of patent infringement was raised in bad faith because the patent itself was obtained in bad faith. Without going into detail, LaBelle argues that Brent Christensen—the owner/inventor of the '042 patent—misrepresented information, and/or failed to disclose other relevant information, to the United State Patent and Trademark Office ("USPTO") in order to obtain the '042 patent. While this may or may not be true, it is a step removed from the analysis before the Court today. Again, the question is not whether the patent was obtained in bad faith, but if the person "asserting a claim . . . of infringement acts in . . . bad faith"—or that a reasonable person would know that the "assertion is meritless." Idaho Code § 48-1703(2)(f). The Court understands LaBelle's argument to be that, if the initial patent was obtained in bad faith any subsequent action (such as asserting infringement) could arguable be viewed as being in bad faith. But in patent litigation, the patent is presumed valid until proven otherwise. *See* 35 U.S.C. § 282. Accordingly, the Court does not need to determine whether Ice Castles *obtained* the '042 patent in bad faith (or delve into the concept of invalidity) at this stage, but only whether Ice Castles brought the *assertion* of infringement in bad faith.[4]

In short, LaBelle is entitled to its position; however, the Court cannot wholesale accept its interpretation of the facts to support a finding of subjective bad faith in asserting infringement. While there are concerning explanations about actions that took place prior

---

[4] To be sure, some of the allegations concerning the validity of the '042 patent greatly concern the Court. In addition, the excerpt of the deposition of Brian Tucker (Dkt. 96-18) is one of the most painful depositions the court has reviewed recently. Ice Castles' relentless stonewalling on simple matters does not lend itself to Rule 1 of the Federal Rules of Civil Procedure or notions of fair play in litigation.

MEMORANDUM DECISION AND ORDER - 13

to this litigation, Ice Castles' puts forth competing explanations for the same behavior that appear more mundane. Those issues will be fleshed out over the course of the litigation and potentially at the summary judgment stage, but are difficult to pin down at this point. Thus, while Ice Castles assertion of infringement might not have been a "home run"—in form or in substance—it is difficult to find that it was brought in bad faith or that a reasonable person in Ice Castles position would know their allegation was meritless. This factor weighs against a finding of bad faith.

Neither side addresses factors: (e) valuation, (g) deception, (h) threatened suits, or (i) any other factor.

As previously noted, Section 48-1703(3) lists other factors—contrasting the previously reviewed factors—that a Court can consider as evidence that an assertion of patent infringement was brought in good faith. Ice Castles claims that factors (a) and (b)[5] weigh in its favor because—as it argued previously—it did engage in good faith efforts to determine if LaBelle's attraction infringed the '042 patent and took informal actions (such as sending cease-and-desist letters) prior to litigation. Additionally, it notes it has made substantial investments in creating, promoting, and operating its ice structure attractions.

---

[5] Idaho Code § 48-1703(3):
(a) The person engages in a good faith effort to establish that the target has infringed the patent and to negotiate an appropriate remedy.
(b) The person makes a substantial investment in the use of the patent or in the production or sale of a product or item covered by the patent.
(c) The person has:
(i) Demonstrated good faith in previous efforts to enforce the patent, or a substantially similar patent; or
(ii) Successfully enforced the patent, or a substantially similar patent, through litigation.
(d) Any other factor the Court finds relevant.

MEMORANDUM DECISION AND ORDER - 14

When taken on the whole, the Court cannot say that LaBelle has "established *a reasonable likelihood* that [Ice Castles] has made a bad faith assertion of patent infringement." *See* Idaho Code § 48-1707 (emphasis added). While certain factors appear to lean toward such a finding, other factors cut against that determination. Now, Ice Castles' claims in this case may or may not prove true. In like manner, LaBelle's arguments against infringement may or may not ultimately prove persuasive in other aspects of this litigation. However, when considering the relevant factors for the *present purposes of imposing a bond*, the Court does not find Ice Castles' assertion of patent infringement was brough in bad faith.

### C. Waiver of Bond

Finally, even if the Court were to find the applicable factors favor a finding of bad faith, that *still* would not necessarily mandate a bond. As Section 48-1707 clearly states "[t]he court may waive the bond requirement if it finds the person has available assets equal to the amount of the proposed bond . . . ." LaBelle originally dismissed this caveat with a passing reference in a footnote, stating that this exception "do[es] not appear to apply here." Dkt. 96-1, at 19 n.67. In its Response, Ice Castles explained that it has sufficient assets to cover any litigation expenses that may arise from this suit (including LaBelle's proposed $500,000 bond) and that the caveat from Section 48-1707 should, therefore, apply. LaBelle counters in its Reply that the Court should not rely on Ice Castles' assertions about its finances because neither LaBelle nor the Court have had a chance to actually review any financial documents to verify Ice Castles' claims. This is only partially true.

In conjunction with its Response to LaBelle's Motion, Ice Castles submitted various

MEMORANDUM DECISION AND ORDER - 15

consolidated financial statements outlining its financial health. LaBelle recognizes this; however, it contends that the Court cannot actually rely on these documents because they are only summaries—as opposed to original documents—and, because Ice Castles has refused to make the originals available for review, the summaries are inadmissible under Federal Rule of Evidence 1006. Without getting into a lengthy discussion about whether the Rules of Evidence are in full force during the discovery phase of a case (or as applied to these specific circumstances), the Court concludes that, in this instance, Ice Castles summaries outlining the general financial health of its company are sufficient. These statements clearly show that Ice Castles could cover a $500,000 bond and/or any judgement in this case.

In short, contrary to LaBelle's summary argument otherwise, the exception within the bond requirement does apply in this case. Thus, even if the Court were to find that LaBelle had "established a reasonable likelihood that [Ice Castles] made a bad faith assertion of patent infringement"—which it does not—it would not require a bond because Ice Castles has clearly shown it has "available assets equal to the amount of the proposed bond." Idaho Code § 48-1707.

The Court is, frankly, still hesitant to definitively find that Idaho Code Section 48-1701 can be utilized in federal district court. Principles of preemption and the *Erie* doctrine call such a conclusion into question. Even assuming the applicability of Section 48-1701, however, LaBelle cannot meet the elements within the statute to the degree necessary for a finding of bad faith. This, in turn, negates the need for a bond.

But again, even assuming LaBelle could have met its threshold burden, the Court

MEMORANDUM DECISION AND ORDER - 16

finds Ice Castles has shown that it has sufficient assets to cover any fees, costs, or judgments that may arise in this case. As that is the underlying purpose of the bond requirement—to ensure the party/entity alleging infringement can cover "the target's costs to litigate the claim and amounts reasonable likely to be recovered under this chapter"—the Court see no reason to require a bond here. Accordingly, LaBelle's Renewed Motion for a Bond is DENIED.

### D. Motions to Seal

Tangentially, as part of the pending motions, both parties submitted certain materials under seal. Each appropriately moved the Court for an order sealing these materials. Dkts. 97, 103.

Ice Castles seeks to file under seal its financial information (Dkt. 103) submitted in support of its argument that it has adequate assets to cover any monetary obligations in this case. LaBelle does not oppose the request. The Court routinely seals financial information such as this and sees no reason to depart from its standard practice here.

LaBelle's Motion to Seal (Dkt. 97), however, is a bit different. In its motion, LaBelle explains that it submitted a partial deposition transcript—Exhibit "U"—in support of its motion, and that based on Ice Castles' prior behavior, it should likely be filed under seal. To explain: Exhibit "U" is the deposition testimony of Ice Castles' Rule 30(b)(6) deponent, Ryan Davis. Shortly after his deposition began, Ice Castles apparently designated the testimony as Attorneys' Eyes Only and maintained that designation during the duration of the deposition. Pursuant to the existing protective order in this case (Dkt. 52-1) materials designated as Attorneys' Eyes Only are just that: restricted to essentially the Court and

counsel. Based upon Ice Castles' actions, LaBelle determined it was probably necessary to request the submission remain under seal. Interestingly, it appears LaBelle asked Ice Castles to review Davis's testimony to clarify which portions were actually deserving of the Attorneys' Eyes Only designation, but Ice Castles declined to do so.

The Court has not seen the entirety of Davis's deposition; however, it seems unlikely that over 250 pages of testimony needs to be classified as Attorneys' Eyes Only. The Court will keep Exhibit "U" under seal. However, Ice Castles must review Davis's testimony to determine whether the entirety of his testimony warrants the designation of Attorneys' Eyes Only.

The Court is always willing to protect confidential information—when appropriate. That said, the Court also has a duty to the public and blanket designations that restrict the public's access to information (such as what Ice Castles appears to have done here) are disfavored. In short, both Motions to Seal are GRANTED.

## V. ORDER

**IT IS ORDERED:**

1. LaBelle's Renewed Motion for Bond (Dkt. 96) is DENIED.

2. The Parties' Motions to Seal (Dkts. 97, 103) are GRANTED. The materials so designated shall remain under seal.

DATED: July 21, 2021

David C. Nye
Chief U.S. District Court Judge