UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ICE CASTLES, LLC, a Utah Limited Liability Company,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>LABELLE ICE PALACE, LLC, an Idaho Limited Liability Company; and LABELLE, LLC, an Idaho Limited Liability Company,<br><br>　　　　Defendants. | Case No. 4:18-cv-00571-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are two Motions in Limine filed by Plaintiff Ice Castles, LLC ("Ice Castles"). The first motion (Dkt. 79) seeks to Exclude Advice of Unidentified Counsel. Similarly, the second motion (Dkt. 91) seeks to Exclude Purported Advice of Counsel by Rhett Barney. Defendants LaBelle Ice Palace, LLC, and LaBelle, LLC, (collectively "LaBelle") have opposed both motions.

Having reviewed the record, the Court finds the parties have adequately presented the facts and legal arguments in their briefs. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court decides the pending motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court will DENY the Motion in Limine to Exclude Advice of Unidentified Counsel and GRANT in PART and DENY in PART the Motion in Limine to Exclude Purported Advice of Counsel by Rhett Barney.

## II. BACKGROUND

On December 27, 2018, Ice Castles filed the instant suit against LaBelle. Dkt. 1. Ice Castles seeks damages and a permanent injunction against LaBelle for infringement of its patent (United States Patent No. 8,511,042 ("the '042 patent)), which protects Ice Castle's patented method (or process) of constructing ice structures. In essence, Ice Castle's and LaBelle are business competitors who each have created outdoor winter attractions constructed of ice which visitors can enter, enjoy, and explore. Ice Castles alleges that LaBelle has continuously infringed on one or more claims and designs of the '042 patent which LaBelle denies.

As part of ongoing discovery, Ice Castles filed a motion in limine to exclude LaBelle from presenting testimony at trial concerning any advice of counsel received from approximately five unknown attorneys.[1] Dkts. 79, at 1–10; 83, at 4–5. In short, prior to this litigation, LaBelle received two cease and desist letters from Ice Castle accusing them of patent infringement and asking them to cease operations. Dkt. 16-4. LaBelle reviewed the letters, consulted with various attorneys, and responded to the letters. Dkt. 16-5. In

---

[1] In fact, LaBelle's 30(b)(6) deponent could not recall the exact number of attorneys LaBelle had contacted or even when it contacted these attorneys. Dkt. 79-1, at 5. Nevertheless, the parties frequently state LaBelle contacted five attorneys. Regardless of the actual number, the Court will do likewise.

MEMORANDUM DECISION AND ORDER-2

addition, LaBelle represented to the media its belief—based upon these attorneys' advice—that it was not infringing the '042 patent. Dkts. 83, at 4.

In addition to the first motion in limine, Ice Castles filed a second motion in limine on October 14, 2020, seeking to exclude an advertisement letter and follow-up phone call between LaBelle representatives and attorney Rhett Barney of the law firm Lee & Hayes. Dkts. 91, at 1–4; 94, at 1–8. In this letter, Barney solicited LaBelle's business and opined briefly on the '042 patent. Dkt. 91-3.

As part of its disclosures in this case, LaBelle confirmed that it had contacted and received oral advice from these five unknown attorneys as well as written advice from attorneys Rhett Barney and Randall B. Bateman. Dkt. 79-3. The unprivileged letters and advice provided by Barney and Bateman were provided through the ordinary course of discovery in this case.[2] *Id.*

### III. LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues."[3] *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). "The term 'in limine' means 'at the outset.' A motion in

---

[2] LaBelle has not provided a privilege log in this case since trial counsel is claiming attorney-client privilege. Dkt. 79-3.

[3] Although the Federal Rules of Evidence do not explicitly authorize motions in limine, the United States Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)). Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (citation omitted) "a district court has discretion in ruling on a motion in limine." *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991); *see United States v. Layton*, 767 F.2d 549, 554 (9th Cir. 1985).

Motions in limine should not be used to resolve factual disputes or to weigh evidence, and evidence should not be excluded prior to trial unless "the evidence [is] inadmissible on all potential grounds." *United States v. Whittemore*, 944 F. Supp. 2d 1003, 1006 (D. Nev. 2013) (quoting *Indiana Insurance Co. v. General Electric Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)); *see United States v. Young*, No. CR 10-00923(C)-SJO, 2013 U.S. Dist. LEXIS 200385, at *4–5 (C.D. Cal. Nov. 22, 2013).

Finally, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial."[4] *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *Luce*, 469 U.S. at 41. Indeed, it is sometimes necessary to defer ruling until trial when a better assessment of evidence can be made. *Regan v. Hdr Eng'g*, No. 1:17-cv-00342-CWD, 2021 U.S. Dist. LEXIS 12579, at *2 (D.

---

[4] "[A party] is not entitled to a definitive ruling on a motion in limine." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999).

MEMORANDUM DECISION AND ORDER-4

Idaho Jan. 13, 2021); *Crawford v. City of Bakersfield*, No. 1:14-cv-01735-SAB, 2016 WL 5870209, at *2 (E.D. Cal. Oct. 6, 2016); *Whittemore*, 944 F. Supp. 2d at 1006.

## IV. ANALYSIS

### A. Motion in Limine to Exclude Advice of Unidentified Counsel (Dkt. 79)

At issue in Ice Castles' first Motion in Limine is the oral advice LaBelle received from five unknown attorneys and whether its reliance on such communications was reasonable at the time.[5] *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389–90 (Fed. Cir. 1983).

In reviewing a willful infringement claim, before the Court considers the "exculpatory value of an opinion of counsel, the legal advice contained therein must be found on the totality of the circumstances to be competent such that the client was reasonable in relying upon it." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998). The Court must consider a number of factors when determining if this advice contains value such as: (1) whether counsel examined the patent file history, (2) whether the opinions were oral or written,[6] (3) the objectivity of the

---

[5] Where, as here, a potential infringer has actual notice of another's patent rights, they have an affirmative duty to exercise due care to determine whether they are infringing. *See Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645, 666 (10th Cir. 1980), *cert. denied*, 449 U.S. 1066, (1980). The potential infringing party has a duty to seek and obtain competent legal advice from counsel before the initiation of any possible infringing activity. *Underwater Devices*, 717 F.2d at 1389–90.

[6] *Compare 3M v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1580 & 1582 n.13 (Fed. Cir. 1992) (finding oral opinion, from trial or opinion counsel, is afforded lesser weight if made years after the event based upon faded memories or other intervening factors), *with Century Wrecker Corp. v. E.R. Buske Mfg. Co.*, 913 F. Supp. 1256, 1273, 1287–88 (N.D. Iowa 1996) (ruling that the consistent reliance on oral opinion of counsel was sufficiently related to a good faith belief in the invalidity of a patent as to affect the award of damages).

opinions, (4) whether the attorneys rendering the opinions were patent attorneys, (5) whether the opinions were detailed or merely conclusory, and (6) whether material information was withheld from the attorney.[7] *Govino, LLC v. Goverre, Inc.*, No. 8:17-cv-01237-JLS-E, 2018 BL 500596, 6 (C.D. Cal. Nov. 20, 2018).

Here, Ice Castles claims the Court should not allow LaBelle to rely on the oral advice it received for three reasons. First, Ice Castles asserts LaBelle failed to comply with general disclosure requirements, as well as local patent rules, in bringing this information to its attention. Second, Ice Castles argues the information is more prejudicial than probative. Finally, Ice Castles asserts the advice constitutes inadmissible hearsay. The Court will address each argument in turn.

*1. Disclosure*

Under District of Idaho Local Patent Rule 3.8 ("Rule 3.8"), any party who has relied on advice of counsel as part of patent-related claim or defense must: "(a) [p]roduce or make available for inspection and copying any written advice and documents related thereto for which the attorney-client and work product protection have been waived, (b) [p]rovide a written summary of any oral advice and produce or make available for inspection and copying that summary and documents related thereto for which the attorney-client and work product protection have been waived, and (c) [s]erve a privilege log identifying any other documents, except those authored by counsel acting solely as trial counsel, relating

---

[7] The court must always consider the evidence from a totality of the circumstances on a case-by-case basis. *3M*, 976 F.2d at 1581 (citing *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 978–79 (Fed. Cir. 1986)).

to the subject matter of the advice which the party is withholding on the grounds of attorney-client privilege or work product protection." Dist. Idaho Loc. Patent. R. 3.8; *see also, Intel Corp. v. VIA Techs., Inc.*, 204 F.R.D. 450, 452 (N.D. Cal. 2001). Additionally, if a party fails to abide by Rule 3.8 within twenty-eight days of service of a Claim Construction Ruling, or any requirement under Rule 3.8, then the party will be barred from relying upon advice of counsel for any purpose unless an agreed upon stipulation by all parties is reached or by order of the Court. *Id.*

Upon review, the Court finds LaBelle's disclosure was minimalistic, but sufficient.[8] In accordance with Rule 3.8, LaBelle did properly disclose, to the best of its knowledge at the time, all known facts and information relating to these five interactions with potential counsel. Dkt. 79-3, at 5; Dkt. 83-4. While LaBelle's disclosure was not all encompassing, it was sufficient to put Ice Castles on notice. For example, because the communications were not reduced to writing, there was nothing there to produce. That said, LaBelle did provide a contemporaneous Rexburg Standard Journal news article with direct representations by LaBelle in alignment with the Rule 3.8 disclosures provided. Dkt. 79-2.

---

[8] LaBelle's disclosure reads (in full) as follows:

> Following receipt of the cease and desist letter, officers of LaBelle contacted approximately 5 attorneys other than current counsel. LaBelle advised the attorneys of the patent number and informed the attorneys that LaBelle creates its ice logs by filling plastic sleeves with water and then freezing the water. After reviewing the patent, each of the attorneys indicated LaBelle was not infringing because LaBelle does not use icicles to make its ice structures.

Dkt. 79-3, at 3.

MEMORANDUM DECISION AND ORDER-7

In like manner, while LaBelle's summary is not overly detailed, it summarizes the general content of the communications.

Critically, at this point, discovery has concluded. Anything that Ice Castles did not know at the time of LaBelle's disclosure has surely been fleshed out and analyzed. Thus, even were the Court to find LaBelle disclosure insufficient, which it does not, it would not preclude the use of this material at trial on that basis alone. It would simply order LaBelle to supplement its disclosure—as contemplated for in Rule 3.8.

*2. Prejudicial Effect*

Second, Ice Castles contends the oral advice should be excluded given the prejudicial effect it may present at trial. Under Federal Rule of Evidence 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[9] Fed. R. Evid. 403. However, when applying the balancing test, "[a] district court is accorded [] wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and

---

[9] "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by the Federal Rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible. Fed. R. Evid. 402.

403 . . . ."[10] *United States v. Abel*, 469 U.S. 45, 54 (1984). Indeed, when applying Rule 403, the Court must utilize a three-step analysis. *Cerniglia v. Cty. of Sacramento*, 566 F. Supp. 2d 1034, 1039–40 (E.D. Cal. 2008). First, the Court must determine if the proffered evidence tends to make the existence of some fact or consequence in the case more or less probable—and the relevancy of said evidence. *Id.* Second, the Court must determine if the evidence at issue has any prejudicial effect. *Id.* Third, if the Court finds a prejudicial effect does exist, then the Court must weigh and balance the probative value of the evidence against the prejudicial effect to determine if the probative value substantially outweighs its prejudicial effect. *Id.*

Here, LaBelle relies on these conversations as part of its advice of counsel defense. It has taken this position from the beginning. It represented to the media right after this case was filed that numerous attorneys believed it was not infringing upon Ice Castle's '042 patent.[11] Dkts. 79-2; 83, at 4. The material is clearly relevant and will aid the finder of fact in determining many disputes and claims in this case—and not just the patent claims.[12] As such, the information, documents, and testimony surrounding the five calls to potential counsel is clearly probative of LaBelle's state of mind prior to the formal filing

---

[10] "A district court virtually always is in the better position to assess the admissibility of the evidence in the context of the particular case before it," particularly with respect to balancing probativeness against potential prejudice under Rule 403." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387–88 (2008).

[11] Notably, LaBelle representative Martin stated in the news article that "[E]very lawyer that we talk to, like every single one, is like 'oh yeah [your] fine, [your] system is so different.'" Dkt. 79-2, at 4.

[12] For example, one of Ice Castles claims in this case is for defamation. LaBelle's statements to the media (and the underpinnings of those statements) are assuredly relevant to whether or not LaBelle defamed Ice Castles.

MEMORANDUM DECISION AND ORDER-9

of claims asserted in this case. *Holmgren v. State Farm Mut. Auto. Ins.*, 976 F.2d 573, 577 (9th Cir. 1992); *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1298–99 (Fed. Cir. 2006).

Furthermore, it does not appear that the testimony would be overly prejudicial to Ice Castles. Ice Castles will be free to cross-examine LaBelle's witnesses who testify to these matters and the jury will be able to evaluate the credibility of that testimony and give it the weight it deems appropriate.[13] Ultimately, the Court will not take this matter out of the hands of the jury because at its base, an advice of counsel defense is reviewed under a "reasonableness" standard. *See, e.g., Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996) ("good faith reliance on the competent advice of counsel constitutes a defense to willfulness."); *see also, e.g.*, *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 746 (Fed. Cir. 1993) ("[defendant] reasonably relied on timely and competent opinions of its outside counsel."). The jury must hear this testimony in order to determine whether LaBelle's actions (of purported continued infringement) were reasonable.

That said, the Court has not seen the full scope of the testimony on this topic and cannot make a definitive ruling on other evidentiary matters (i.e. foundation etc.) at this time. Naturally, the Court will defer ruling on those matters until trial.[14] *Ohler*, 529 U.S. at 758 n.3.

---

[13] For example, Ice Castles' concerns about the statements, the credentials of those making the statements, and LaBelle's subsequent behavior are all matters ripe for cross-examination and go to the weight of the testimony as opposed to its admissibility.

[14] The Court could take this matter up again in a pre-trial motion in limine that explains the relevant testimony, or it could simply rule on the objection on a person-by-person basis prior to those individuals' testimony at a hearing conducted outside the presence of the jury.

*3. Hearsay*

Finally, Ice Castles contends the oral advice is inadmissible hearsay and must not be allowed at trial. Dkt. 79, at 13.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[15] *Orr v. Bank of Am.*, 285 F.3d 764, 778 (9th Cir. 2002) (citing Fed. R. Evid. 801(c)). Nevertheless, hearsay may be admitted as evidence using a procedural or statutory exemption under Federal Rules of Evidence 401, 402, 803, 804, or 807. *Orr*, 285 F.3d at 778; *United States v. Arteaga*, 117 F.3d 388, 396 (9th Cir. 1997). Rule 401/402 concerning "relevant evidence" and Rule 803(3) regarding an actor's state of mind appear relevant in this case and the question of willful infringement.[16]

The statements at issue here appear to all be matters of opinion that go to the heart of LaBelle's state of mind prior to the instant litigation. Thus, upon a cursory review, it appears they are not hearsay and/or would fit within an enumerated exception. That said,

---

[15] Federal Rule of Evidence 802 prohibits the admission of hearsay at trial. Fed. R. Evid. 802.

[16] Willfulness is a question of fact and involves a determination as to an infringer's state of mind. *Holmgren*, 976 F.2d at 577 (holding otherwise privileged materials "may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling"); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221 (Fed. Cir. 1995) ("Willfulness of infringement is a question of fact, for it includes elements of intent, reasonableness, and belief."). Also relevant is whether the infringing party received any other opinions of counsel on the same subject matter as the advice they ultimately decide to rely upon. *EchoStar*, 448 F.3d at 1298–99; *Autobytel, Inc. v. Dealix Corp.*, 455 F. Supp. 2d 569, 571–72 (E.D. Tex. 2006) (holding what a defendant knew about an infringement is relevant, demonstrates their state of mind, and a non-privileged fact).

MEMORANDUM DECISION AND ORDER-11

as noted above, the Court cannot definitively know until it hears the actual testimony at trial. Thus, its findings today are preliminary.

### 4. Conclusion

While it is difficult to fully rule on this motion without the benefit of these witnesses' testimony or in the heat of trial when all facts and arguments have been presented, the Court finds LaBelle's disclosure was proper, the information is likely more probative than prejudicial, and likely not hearsay. For all of these reasons, the Court will DENY the Motion without prejudice. Ice Castles can renew its objections if/when it becomes appropriate at trial.

### B. Motion in Limine to Exclude Advice of Rhett Barney (Dkt. 91)

The Court turns next to Ice Castles' second Motion in Limine. At issue here is a solicitation letter and subsequent phone call between Rhett Barney and LaBelle. In short, as part of its Rule 3.8 disclosures, LaBelle referred to "written advice received from Rhett Barney." Dkt. 91-2, at 3. However, the referenced letter appears to be an advertisement asking LaBelle to retain Barney's firm to defend it in this litigation. Ice Castles asserts that this is not truly "advice of counsel" and cannot be used at trial. There is also reference to a subsequent phone call. The Court begins by discussing the letter and whether it is an advertisement or constitutes advice of counsel. It will then discuss the phone call.[17]

---

[17] Unfortunately, the Court's discussion is quite brief because LaBelle largely failed to respond to Ice Castles' arguments. *See* Dkt. 94. The bulk of LaBelle's brief regurgitates prior arguments not really applicable here. What's more, LaBelle deflects Ice Castles' concerns by alleging the materials are admissible under the Federal Rules of Evidence. This was not Ice Castles' concern, nor the Courts.

To be considered an advertisement in the State of Idaho, any communication sent to a potential client must contain a clear and obvious "advertisement" notice somewhere within the written solicitation in addition to "Advertising Material" displayed prominently on the envelope. Idaho Rules of Pro. Conduct 7.3(c) (Idaho Bar Ass'n 2004); *Peel v. Atty. Registration & Disciplinary Comm'n*, 496 U.S. 91, 110 (1990) (citing *Bates v. State Bar of Ariz.*, 433 U.S. 350, 374–75 (1977); *Shapero v. Ky. Bar Ass'n*, 486 U.S. 466, 476–78 (1988)) (holding attorney solicitation regulation is best left to state bar associations to regulate, including requiring the solicitation letter to contain an "advertisement" disclosure).

Even though the opinion letter sent by Barney was marked as an advertisement, it is, nevertheless, an opinion based upon a careful review of the '042 patent by two licensed patent attorneys engaged by Barney. Dkt. 94, at 1–8; *EchoStar*, 448 F.3d at 1298–99; *Autobytel, Inc.*, 455 F. Supp. 2d at 571–72; *Celerity*, 476 F. Supp. 2d at 1165 (ruling opinion letters sent after a claim is brought are relevant and must be provided under Rule 3.8 when an advice of counsel defense is raised); *Genentech, Inc.*, 442 F. Supp. 2d at 846. Indeed, both Ice Castles and LaBelle stipulated the opinion letter is an advertisement,[18] but given the in-depth review by patent attorneys of the underlying patent and the relevant documents filed in this case;[19] the express belief that the patent was unenforceable in both

---

[18] Dkts. 91, at 8; 94, at 7.

[19] The two patent attorneys Barney engaged were Andrew Strickland and Bea Koempel-Thomas who created the "significantly more complex" first draft of the solicitation letter which was subsequently

the patent attorney's initial draft of the letter and Barney's subsequent revised draft;[20] and the deposition transcripts supporting Barney's legal opinion in this case;[21] it appears this letter *is* more than just a simple advertisement.[22]

The Court must also address timing. Relying on *Omega Pats., LLC v. CalAmp Corp.*, 920 F.3d 1337, 1352 (Fed. Cir. 2019), Ice Castles notes that because Barney sent this letter to LaBelle *after* this case had been filed it cannot be relied upon as "advice of counsel." Ice Castles position is not wholly without merit as many courts have so found. That said, it has also long been held that when the advice "is relevant to ongoing, willful infringement" it can be relied upon (and should be disclosed) even if provided after litigation begins. *See EchoStar*, 448 F.3d at 1303 ("EchoStar contends that waiver of opinions does not extend to advice and work product given after litigation began. While this may be true when the work product is never communicated to the client, it is not the case when the advice is relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation."). *See also Akeva LLC,* 243 F. Supp. 2d at 423

---

"dumbed down for [Barney's staff]" prior to mailing it to LaBelle. Dkt. 94-1. Barney's letter referenced both the record in this case and the '042 patent underlying the dispute. Dkts. 94, at 4–8; 94-1. Furthermore, the emails between Barney's firm Lee & Hayes and Strickland indicated the '042 patent is not enforceable and "is ripe for a 12b6 [summary judgement] motion." Dkt. 94-1.

[20] Dkt. 94, at 6–7, 94-1.

[21] Dkt. 94-1.

[22] The Court notes that Barney has *not* done anything wrong here. His letter conforms with Idaho Rules of Professional conduct. And from his perspective, the letter might not have been advice. Nevertheless, *LaBelle viewed it as advice*. Because a jury will be reviewing LaBelle's actions and whether they were reasonable, the Court will allow the letter to come in (regardless of Barney's perception of how the letter should have been received). The jury will then weigh the evidence.

MEMORANDUM DECISION AND ORDER-14

("[O]nce a party asserts the defense of advice of counsel, this opens to inspection the advice received during the entire course of the alleged infringement."); *see also Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,* 246 F.3d 1336, 1351–1353 (Fed.Cir.2001) (noting that an infringer may continue its infringement after notification of the patent by filing suit and that the infringer has a duty of due care to avoid infringement after such notification). Because Ice Castles seeks an injunction against LaBelle, i.e. it contends LaBelle is continuing to infringe its '042 patent, the Court finds Ice Castles properly disclosed Barney's letter even though it was provided after the case began. The Court further finds the letter can be used as part of LaBelle's advice of counsel defense.

The same, however, cannot be said about a subsequent phone call between Barney and LaBelle. LaBelle does not dispute that it did not disclose any written or oral communications with Barney beyond the letter addressed above. Dkt. 94, at 8. Thus, given the lack of timely disclosure as required under Rule 3.8, the Court will exclude the phone call.

## V. CONCLUSION

For all the reasons stated above, the Court will DENY Ice Castle's Motion in Limine to Exclude Advice of Unidentified Counsel. As to the Motion in Limine to Exclude Purported Advice of Counsel by Rhett Barney, the Court will DENY the request to exclude Barney's letter but will GRANT the request to exclude the oral communication between Barney and LaBelle.

## VI. ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

MEMORANDUM DECISION AND ORDER-15

1. Ice Castles' Motion in Limine to Exclude Advice of Unidentified Counsel (Dkt. 79) is DENIED.

2. Ice Castles' Motion in Limine to Exclude Purported Advice of Counsel by Rhett Barney is GRANTED in PART and DENIED in PART as outlined above.

DATED: September 10, 2021

David C. Nye
Chief U.S. District Court Judge